## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SHERI DESPOINTES                                      Case No.:

     Plaintiff,

vs.

ASSETCARE, LLC, and CAPIO
PARTNERS, LLC,

     Defendants
_____/

## COMPLAINT
## JURY DEMAND

1.     Plaintiff, SHERI DESPOINTES ("Plaintiff") by and through the undersigned counsel hereby brings this action against Defendants, ASSETCARE, LLC, and CAPIO PARTNERS, LLC for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA") and the Florida Consumer Collection Practices Act § 559.72 *et seq.* (hereinafter "FCCPA").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.     Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

4.     Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Palm Beach County, Florida.

## PARTIES

5.      Plaintiff is a natural person who, at all times relevant to this action, is and was a resident of Palm Beach County, Florida.

6.      Plaintiff, who, as more fully described herein, is allegedly obligated to pay a debt and is therefore a consumer within the meaning of 15 U.S.C. § 1692a(3).

7.      Defendant, CAPIO PARTNERS, LLC, (hereinafter "Capio") is a Texas limited liability company engaged in the business of collecting debts in this state with its principal place of business located at 2222 Texoma Parkway, Suite 150 Sherman, TX 75090.

8.      Defendant, ASSETCARE, LLC, (hereinafter "Assetcare") is a Texas limited liability company engaged in the business of collecting debts in this state with its principal place of business located at 2222 Texoma Parkway, Suite 150 Sherman, TX 75090,

9.      Assetcare maintains a registered agent within this state as: CT CORPORATION SYSTEM, 1200 South Pine Island Road, Plantation, FL 33324.

10.     Assetcare, and Capio shall be collectively referred to as the "Debt Collector Defendants."

11.     Debt Collector Defendants use the mail and telephone in a business the principal purpose of which is the collection of debts. Defendants are each a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and Florida Statute §559.55(7).

12.     Plaintiff is a "consumer" as defined by Florida Statute §559.55(8).

13.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

## APPLICABLE LAW

### The Fair Debt Collection Practices Act (FDCPA)

14.     "Nearly one-third of consumers with credit reports (31.6 percent) have one or more collections tradelines on their credit reports. About 19.5 percent of credit reports - nearly one in five - contain one or more medical collections tradelines, while 24.5 percent contain one or more non-medical tradelines." *See* Consumer Fin. Protection Bur., Consumer credit reports: A study of medical and non-medical collections, 5 (Dec. 2014).

15.     "Reporting derogatory information such as a collections tradeline may motivate the consumer to contact the collection agency to resolve the debt . . . A collector may be most likely to resort to this tactic when the amount owed on a collections account is small." *See* Id. at 35-36.

16.     "Small dollar accounts are most often observed for telecommunications, utility, and medical accounts. Attempts to make direct contact with the consumer via mail or telephone to collect may not be cost efficient based on the odds of recovery and the amounts recovered. Industry interviews have suggested that some collectors employ a strategy of 'passive collections' that involves reporting a debt in collections to the [National Credit Reporting Agencies] and simply waiting for the consumer to discover the tradeline (rather than actively seeking to collect from the consumer)." *See* Id. at 36.

17.     The FDCPA provides, in relevant part: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2) The false representation of -- (A) the character, amount, or legal status of any debt … 15 U.S.C. § 1692e.

18.     A consumer has a right under the FDCPA to receive information from a debt collector that is not "false, deceptive, or misleading." *Pralle v. Cooling & Winter, LLC*, No. 2: 16-cv-865-FtM-99CM (M.D. Fla. May 2, 2017).

19.     The FDCPA defines the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3) (emphasis added).

20.     The FDCPA defines the term "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added).

21.     The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added).

22.     The FDCPA is essentially a strict liability statute and, therefore, does not require a showing of intentional conduct on the part of a debt collector. *See Rivera v. Amalgamated Debt Collection Services*, 462 F. Supp. 2d 1223 (S.D. Fla. 2006).

23.     For the purposes of the claims brought in this action, the applicable standard under the FDCPA in the Eleventh Circuit is "the least sophisticated" consumer test. *See Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the test enunciated in *Exposition Press Inc. v. FTC*, 295 F.2d 869 (2d Cir. 1961)).

24.     The principles underlying the FDCPA must be implemented for "the public—that vast multitude which includes the ignorant, the unthinking and the credulous." *Jeter*, 760 F.2d at 1172-73 (internal citations omitted).   The "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  Id. at 1173 (internal citations omitted).

25.     There is only one affirmative defense to liability for a violation of the FDCPA, the "bona fide error" defense. 15 U.S.C. §1692k(c).

26.     To take advantage of this defense, the defendant must show by the preponderance of the evidence that its violation of the Act was not intentional, was a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error. *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352-53 (11th Cir. 2009).

### Florida Consumer Collection Practices Act (FCCPA)

27.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

28.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." Fla. Stat. § 559.55(8).

29.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

30.     Consumer protection statutes are remedial in nature and should be liberally construed in favor of the public. *See Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990).

31.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

32.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. Fla. Stat. § 559.72. This language includes all unlawful attempts at collecting consumer debts by creditors and debt collectors alike. *See Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. 4th DCA 1976).

33.     Additionally, the FCCPA provides that no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Fla. Stat. § 559.72(5).

## **FACTUAL ALLEGATIONS**

34.     On or about November 7, 2019, Plaintiff became aware of medical debt that was being falsely reported to one or more third parties.

35.     Plaintiff was comparing possible mortgage rates for a home loan through two different lenders: Guaranteed Rate and Loan Depot.

36.     Plaintiff was first informed of this alleged medical debt by Loan Depot.

37.     Prior to the medical debt appearing on Plaintiff's credit reports, Plaintiff had received pre-approval on her home mortgage loan with Guaranteed Rate in July of 2019.

38.     Subsequently, Loan Depot sent Plaintiff an email screenshot of the medical debt in question; a true and correct image of the emailed screenshot is attached to this Complaint as Exhibit "A."

39.     The screenshot of the account appeared to Plaintiff with the following image and information:



40.     The amount of the collection was $52 being reported by Assetcare and Capio as the furnishers of information[1] (hereinafter "Account.")

---

[1] A "furnisher of information" under the Fair Credit Reporting Act ("FCRA") provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

41.     Guaranteed Rate then confirmed the Account was appearing on Plaintiff's

Credit reports via email; the email appeared with the following image and information:



42.     Plaintiff was also notified that her credit score dropped considerably after the Account was being reported on her Experian and Trans Union credit reports; the screenshot of Plaintiff's drop in credit score relative to her Trans Union credit report appeared with the following image:



43.     Based upon the information in the screenshot above and Exhibit "A," Assetcare and Capio were reporting this negative and inaccurate information to at least two of the National Credit Reporting Agencies who are commonly known as Experian and TransUnion.

44.     Although the Creditor is listed as "Medical Payment Data" in the email screenshot above and Exhibit "A," the true name of the medical provider is unknown to Plaintiff at this time.

45.     The Fair and Accurate Credit Transactions Act ("FACTA") of 2003 amended the FCRA to limit the use and sharing of medical information in the financial system.

46.     Specifically, FACTA §412 amended 15 U.S.C. §1681c(a) to read "[e]xcept as authorized under subsection(b), no consumer reporting agency may make any consumer report containing any of the following items of information . . .

> (6) The name, address, and telephone number of any medical information furnisher that has notified the agency of its status, unless— ''(A) such

name, address, and telephone number are restricted or reported using codes that do not identify, or provide information sufficient to infer, the specific provider or the nature of such services, products, or devices to a person other than the consumer;

(omissions added).

47.     This unknown Creditor assigned the Account to Assetcare and Capio to collect.

48.     Plaintiff used the information in the email screenshot to call Assetcare and/or Capio at (888) 993-3605 to uncover why the Account was being reported on her credit reports.

49.     Plaintiff called and spoke to a representative who advised her to file a fraud report with the police if she wanted to dispute the account.

50.     In the middle of her attempts to be approved for a home loan, Plaintiff began investigating the Account and found out it was due to her then infant daughter being admitted to Delray Medical Center located at 5352 Linton Blvd, Delray Beach, FL 33484.

51.     Plaintiff went to Delray Medical Center to gather information and was provided documents which revealed Plaintiff's daughter was admitted on or about August 25, 2013. A redacted copy of the documents provided to Plaintiff are attached hereto as Exhibit "B."

52.     The documents revealed that Plaintiff's ex-husband was the one who accompanied their daughter to Delray Medical Center. *See* Id.

53.     Plaintiff was neither there on the date her daughter was admitted, nor did she sign any documents that would have obligated her to pay any amounts owed. *See* Id.

54.     Despite such a discovery, Plaintiff could do nothing to stop the Account from being part of her evaluation for a home loan from prospective lenders.

55.     The credit reports where the Account was viewed by Plaintiff and prospective lenders came from "reseller[s]" of information.[2]

56.     According to Plaintiff's January 14, 2020 credit report from TransUnion (hereinafter "TransUnion Report"), Guaranteed Rate received said report via the reseller, Factual Data. A true and correct copy of the relevant portions of Plaintiff's TransUnion credit report is attached hereto as Exhibit "C."

57.     Plaintiff was trying to qualify for a home mortgage loan when the Account was viewed by her and Guaranteed Rate.

58.     According to Plaintiff's TransUnion report, Guaranteed Rate via Factual Data, first viewed the Account on November 7, 2019. *See* Exhibit "C."

59.     Plaintiff was originally approved for a home loan with Guaranteed Rate for a 4.1% interest rate over the life of the loan.

60.     As a result of the Account being on Plaintiff's credit reports, she was no longer qualified with Guaranteed Rate.

61.     Plaintiff then sought out Loan Depot to see if she could qualify for the home she still wished to purchase.

62.     According to Plaintiff's TransUnion report, Loan Depot received said report via the reseller, Credco, on November 7, 2019 and November 12, 2019. *See* Exhibit "C."

---

[2] *See* 15 U.S.C. §1681a(u) The term "reseller" means a consumer reporting agency that –
(1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and
(2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

63.     Plaintiff was trying to qualify for a home mortgage loan when the Account was viewed by her and Loan Depot.

64.     Loan Depot advised Plaintiff that she could qualify for a 3.885% interest rate if she paid around $3,000 in "mortgage points." [3]

65.     According   to   https://www.bankrate.com/mortgages/mortgage-points/ prospective home buyers can pay down the interest on their home loan by paying in advance; the more points that are purchased, the more home buyers can save on their loans. *See* Id.

66.     Plaintiff was unable to pay the required mortgage points to qualify for a home loan with Loan Depot.

67.     As a result, Plaintiff would seek out a third lender known as First Home Bank.

68.     According to Plaintiff's TransUnion report, First Home Bank received said report via the reseller, Factual Data, on November 19, 2019. *See* Exhibit "C."

69.     Plaintiff was trying to qualify for a home mortgage loan when the Account was viewed by her and First Home Bank.

70.     Ultimately, First Home Bank was able to offer Plaintiff an interest rate of 3.75% over the life of the loan if she were to pay $1,900 in mortgage points and pay off the Account in full.

71.     First Home Bank paid an additional $1,000 towards Plaintiff's mortgage points so she would qualify for the mortgage loan.

72.     On or about November 19, 2019, Plaintiff paid off the Account so she could finally be approved for a home mortgage loan.

---

[3]   *See* Mortgage   points   and   how   they   can   cut   your   interests   costs https://www.bankrate.com/mortgages/mortgage-points/, last visited February 3, 2020.

73.     Attached to this Complaint is a true and correct copy of the credit report reviewed by First Home Bank via Factual Data, which shows the account at a $0 balance. *See* Exhibit "D."

74.     After paying off the Account, Plaintiff received an email communication with a written letter attached explaining that she was not the responsible party for the services rendered to her daughter. A true and correct copy of the email and attachment sent to Plaintiff is attached hereto as Exhibit "E."

75.     Between November 25, 2019 and December 10, 2019, the Account was removed from Plaintiff's Trans Union report.

76.     Plaintiff received a notification through her free credit monitoring app known as Credit Karma with the following image:



## COUNT I – VIOLATIONS OF 15 U.S.C. §1692e(8)
## AGAINST CAPIO FOR COMMUNICATIONS TO TRANS UNION AND EXPERIAN

77.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 7 and 10 through 76 as if fully set forth herein.

78.     A "debt collector" violates 15 U.S.C. §1692e(8) by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

79.     The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium. 15 U.S.C. §1692a(2).

80.     Capio violated 15 U.S.C. §1692e(8) when it furnished negative, inaccurate, and/or misleading information regarding Plaintiff's responsibility for the Account to Experian and Trans Union which Capio either knew or should have known was false because Plaintiff never signed any forms that obligated her to pay the debt described herein.

81.     Capio's respective communication(s) to Experian and/or Trans Union are separate violations of §1692e(8).

82.     The FDCPA is a strict liability statute and accordingly Defendant's conduct need not have been intentional, Defendant's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

83.     Defendant, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(8).

84.     15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with

any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

85.     As a result of Defendant's aforementioned violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation for credit worthiness, an inaccurate credit report, emotional distress, out-of-pocket monetary to qualify for the mortgage she sought after the Account was reported as a collection, and any other damages that are fairly traceable to Capio's conduct described herein.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against Defendant for:

a.     Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

b.     Attorneys' fees, litigation expenses and costs of the instant suit; and

c.     Such other or further relief as the Court deems proper.

## COUNT II – VIOLATIONS OF §559.72(5) AGAINST CAPIO FOR DISCLOSURES TO EXPERIAN AND TRANSUNION

86.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 7 and 10 through 76 as if fully set forth herein.

87.     At all times relevant to this action, Capio is subject to and must abide by the law of Florida, including Florida Statute §559.72.

88.     The FCCPA provides that no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have

a legitimate business need for the information or that the information is false." Fla. Stat. §
559.72(5).

89.     Capio knowingly disclosed false information to Experian and Trans Union
when it furnished the Account information to said entities because Plaintiff was not present
to sign, agree to, or authorize any charges related to the care of her daughter on August 25,
2013.

90.     Plaintiff never signed any forms that obligated her to pay the debt described
and therefore, the debt never should have appeared as a collection item

91.     "Any person who fails to comply with any provision of s. 559.72 is liable for
actual damages **and for additional statutory damages as the court may allow**, but not
exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the
plaintiff. In determining the defendant's liability for any additional statutory damages, the
court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency
and persistence of the noncompliance, and the extent to which the noncompliance was
intentional." Fla. Stat. 559.77(2) (emphasis added).

92.     As a result of Defendant's aforementioned violations, Plaintiff suffered
damages, including but not limited to, time spent addressing Defendant's illegal collection
practices, misrepresentation of an amount to a third party, damage to her reputation for credit
worthiness, an inaccurate credit report, emotional distress, out-of-pocket monetary to qualify
for the mortgage she sought after the Account was reported as a collection, and any other
damages that are fairly traceable to Capio's conduct described herein.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her
favor and against Defendant Capio for:

a.  Actual, statutory, and punitive damages pursuant to Fla. Stat. § 559.77;

b.  attorneys' fees, litigation expenses and costs of the instant suit; and

c.  such other or further relief as the Court deems proper.

### COUNT III – VIOLATIONS OF 15 U.S.C. §1692e(8)
### AGAINST ASSETCARE FOR COMMUNICATIONS TO
### TRANS UNION AND EXPERIAN

93.      Plaintiff incorporates by reference the allegations in paragraphs 1 through 6 and 8 through 76 as if fully set forth herein.

94.      A "debt collector" violates 15 U.S.C. §1692e(8)  by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

95.      The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium. 15 U.S.C. §1692a(2).

96.      Assetcare violated 15 U.S.C. §1692e(8) when it furnished negative, inaccurate, and/or misleading information regarding Plaintiff's responsibility for the Account to Experian and Trans Union which Assetcare either knew or should have known was false because Plaintiff never signed any forms that obligated her to pay the debt described.

97.      Assetcare's respective communication(s) to Experian and Trans Union are separate violations of §1692e(8).

98.      The FDCPA is a strict liability statute and accordingly Defendant's conduct need not have been intentional, Defendant's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

99.    Defendant, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(8).

100.    15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

101.    As a result of Defendant's aforementioned violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation for credit worthiness, an inaccurate credit report, emotional distress, out-of-pocket monetary loss to qualify for the mortgage she sought after the Account was reported as a collection, and any other damages that are fairly traceable to Assetcare's conduct described herein.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against Defendant for:

a.    Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

b.    Attorneys' fees, litigation expenses and costs of the instant suit; and

c.    Such other or further relief as the Court deems proper.

## COUNT IV – VIOLATIONS OF FLA. STAT. 559.72(5) AGAINST ASSETCARE FOR DISCLOSURES TO EXPERIAN AND TRANSUNION

102.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 6 and 8 through 76 as if fully set forth herein.

103.    At all times relevant to this action, Assetcare is subject to and must abide by the law of Florida, including Florida Statute §559.72.

104.    The FCCPA provides that no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Fla. Stat. § 559.72(5).

105.    Assetcare knowingly disclosed false information to Experian and Trans Union when it furnished the Account information to said entities because Plaintiff was not present to sign, agree to, or authorize any charges related to the care of her daughter on August 25, 2013.

106.    Plaintiff never signed any forms that obligated her to pay the debt described and therefore, the Account never should have appeared as a collection item.

107.    "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages **and for additional statutory damages as the court may allow**, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

108.    As a result of Defendant's aforementioned violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation for credit worthiness, an inaccurate credit report, emotional distress, out-of-pocket monetary loss to

qualify for the mortgage she sought after the Account was reported as a collection, and any other damages that are fairly traceable to Assetcare's conduct described herein.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against Defendant, Assetcare for:

    d.   Actual, statutory, and punitive damages pursuant to Fla. Stat. § 559.77;

    e.   attorneys' fees, litigation expenses and costs of the instant suit; and

    f.   such other or further relief as the Court deems proper.

## **JURY DEMAND**

109.     Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**SHARMIN & SHARMIN, P.A.**
830 North Federal Highway
Lake Worth, FL 33460
Telephone: 561-655-3925
Fax: 561-202-9041
Direct: 954-667-3096
/s/ *Kevin Rajabalee*
Kevin Rajabalee, Esq.
FBN: 119948
Email: kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
Email: eiman@sharminlaw.com